[L. A. No. 14238. In Bank.—January 25, 1935.]

F. A. BEACH (FRANK C. AYARS Substituted Plaintiff), Respondent, v. FRANK F. FAUST et al., Appellants.

Kemp, Partridge & Kemp, Thomas C. Ridgway and Herbert C. Kelly for Appellants.

Powell & Powell and Hubert F. Laugharn for Respondent.

WASTE, C. J.—This controversy involves a one-third interest in a vacant tract of land in Kings County near the Kettleman Oil Field. This interest originally stood of record in the name of B. W. Marks. While the interest in the property stood of record in Marks' name, he filed a petition in bankruptcy, and was adjudicated a bankrupt by the United States District Court for the Southern District of California, which includes Kings County. The order of adjudication was made January 29, 1929. No certified copy of the decree of adjudication of bankruptcy was filed in Kings County, as required by the Bankruptcy Act. Marks did not include the property in controversy in the schedule of assets, and the trustee in bankruptcy did not learn of its existence until some time later. Without any knowledge of the bankruptcy, T. A. Slocum, in May, 1929, paid Marks one hundred dollars for a quitclaim deed to the property. Shortly thereafter, Frank F. Faust, one of the appellants, obtained a search of title which showed title vested in Marks, and contained no reference to any bankruptcy proceedings. Faust then called on Marks, who told him that he (Marks) had conveyed his interest in the property to Slocum, but

did not mention his (Marks') bankruptcy. Faust, without any knowledge of the bankruptcy, then paid Slocum two hundred and fifty dollars for a deed to the property. Thereafter, and on January 7, 1930, the trustee in bankruptcy, having learned of Marks' interest in the property, sold the one-third interest to the plaintiff Beach, who bought the property for Frank C. Ayars, and the latter has been substituted as the plaintiff in this action. In the meantime, one C. A. Walker instituted an action to quiet title against Marks and others, covering the property. *Lis pendens* in usual form was recorded. Walker obtained judgment against Marks, and subsequently quitclaimed the property to appellant Faust.

Upon this state of facts the trial court gave judgment for the plaintiff on the theory that the bankruptcy proceeding in the federal court was constructive notice *per se* to all intending purchasers that Marks, the original owner of the property, had been declared a bankrupt. There is some evidence that Marks told Slocum at the time he paid Marks the one hundred dollars for a quitclaim deed that he did not think he was the owner of the property. As already stated, Marks made no reference to his previous adjudication in insolvency. Concisely stated, the respondent claims under the court sale in the bankruptcy proceeding, while the appellants claim under the quitclaim deeds from the bankrupt Marks and Slocum and under the Walker judgment.

It is the contention of appellants that, since a certified copy of the order adjudicating Marks a bankrupt, and a certified copy of the order approving the trustee's bond were not recorded in Kings County until after the recordation of the quitclaim deeds referred to, and as both Slocum and Faust paid a consideration (not shown to be inadequate) for the respective quitclaim deeds, Slocum was a *bona fide* purchaser for value, and without notice, and that Faust, who acquired from Slocum, is similarly a *bona fide* purchaser, and is protected by the recording laws of this state.

The recording laws were not enacted to protect those whose ignorance of the title is deliberate and intentional, nor does a mere nominal consideration satisfy the requirement that a valuable consideration must be paid. Their purpose is to protect those who honestly believe they are

acquiring a good title, and who invest some substantial sum in reliance on that belief. ■ That a deed conveys merely "the right, title and interest" of the grantor does not prevent the grantee from being a purchaser for a valuable consideration, without notice, within the recording laws, so as to be protected from unrecorded instruments affecting the title to the property of which he had no notice. (*Phoenix Title & Trust Co.* v. *Old Dominion Co.,* 31 Ariz. 324 [253 Pac. 435, 59 A. L. R. 625] ; *Wisconsin River Land Co.* v. *Selover,* 135 Wis. 594 [116 N. W. 265, 16 L. R. A. (N. S.) 1073].) The pertinent provisions of our own recording laws are found in sections 1213, 1214, and 1217 of the Civil Code.

■ It has long been the accepted rule in this state that real estate, or an interest in real estate, can be aliened or assigned by a quitclaim deed. (*Graff* v. *Middleton,* 43 Cal. 341–344.) Such a deed is good as against even an unrecorded grant, bargain and sale deed. (*Dunn* v. *Carroll,* 101 Cal. App. 209 [281 Pac. 506], and cases cited.)

■ The adjudication of Marks in the bankruptcy court was not of itself notice *per se,* and the trustee was required within thirty days after the adjudication to file a certified copy of the decree of adjudication in the office where conveyances of real estate are recorded in every county where the bankrupt owned real estate not exempt from execution. (U. S. Code, Title 11, sec. 75, subd. [c].) It is not here claimed the property was exempt.

■ For the foregoing reason, we are of the view that the appellant Faust, defendant in the court below, was a *bona fide* purchaser of the property in controversy, and was protected by the recording laws.

For these reasons, the judgment must be, and is, reversed.

Curtis, J., Langdon, J., Shenk, J., Seawell, J., and Thompson, J., concurred.